ROACH v. KENTUCKY MUTUAL SECURITY FUND COMPANY.

1. Upon the point being made that plaintiff in his opening argument should fully disclose his case, the trial judge properly read the rule of court upon the subject, and directed plaintiff to comply therewith.

2. An insurance company issued a circular letter to one of its members proposing to transfer his insurance to defendant company, and inclosing blank application for transfer, which was filled out and forwarded to defendant, who sent back a policy. In action on this policy the circular letter was admissible in evidence as part of the *res gestae.*

3. In action on a policy of insurance defendant company in its answer alleged that false statements were contained in the application for insurance, which was made a part of the contract. *Held,* that the onus was on defendant to show what the application contained, and until it was introduced in evidence by defendant, plaintiff was not called upon to prove the truth of the statements therein contained.

4. Where the judge charged the jury that the plaintiff could not recover unless certain statements made in his application for insurance were true, it matters not to defendant whether such statements were warranties or were merely representations.

5. A complaint on an insurance policy alleged that the assured had performed all of its conditions, and the answer alleged three breaches. *Held,* that the only issues raised by the answer were as to said three

breaches, and that plaintiff was not bound to offer proof as to any others.

Before KERSHAW, J., Greenville, July, 1886.

This action was commenced in York County, and afterwards by consent transferred to Greenville. The case came up on the following exceptions :

For that his honor erred—

1. In holding that the answer of defendant did not put in issue the allegation of the complaint that the said W. L. Roach duly fulfilled and conformed to all the conditions and requirements of said certificate of membership, so as to require proof of performance of any of the conditions upon which the certificate issued.

2. In allowing the plaintiffs to offer proof of performance of other conditions than those pleaded in the complaint, without ordering the complaint to stand amended to conform to the proof, whilst at the same time excluding the evidence offered by defendant to show non-performance of said conditions.

3. In holding that these statements and every of them made in the application of W. L. Roach for membership in the defendant company were, by the contract of insurance, representations merely, and not warranties.

And in refusing to hold—(*a*) That said statements must be shown to have been strictly true. (*b*) That they or any of them were made material by the terms of the contract. (*c*) That if they or any of them were falsely made, whether fraudulently or not, it rendered the policy void.

4. In allowing the plaintiffs, over defendant's objection, to offer in evidence to prove the agreement between the two companies, the circular letter of the Knights of Honor Mutual Aid Association sent by said company to W. L. Roach, along with the blank application for membership in the defendant company, referred to in said circular as a "health certificate."

5. In allowing a witness for the plaintiffs to testify, over defendant's objections, that defendant's agent had offered to compromise plaintiffs' claim herein.

6. In refusing defendant's motion for a non-suit, for failure on

the plaintiffs' part either (*a*) To put in evidence the application of W. L. Roach for membership in the Knights of Honor Mutual Aid Association, which was expressly made a part of the contract with the defendant company; or (*b*) to offer evidence of performance of any of the conditions made in said application.

7. In excluding from the consideration of the jury all evidence of unsoundness or intemperate habits in W. L. Roach, except such as tended to establish the two special matters set up in the answer, to wit, (*a*) Unsoundness from chronic diarrhœa at the time of the application; (*b*) Intemperate habits, especially in the matter of eating, producing dyspepsia, and superinducing the disease of chronic diarrhœa.

8. In refusing, upon request, to instruct the jury that the policy would be void if they should conclude that W. L. Roach's health, although it might have been sound at the time of the application, became unsound as charged in the answer at any time prior to the date of the policy, and that he concealed this fact from the defendant company; provided they should conclude that by the terms of agreement between the Knights of Honor Mutual Aid Association and the defendant company the applicant was not to be deemed insured until the application should be approved; and that it was not approved prior to the date of the said policy.

9. In charging the jury in the language of paragraph II., sub-division 2, of the answer, without explanation (upon request) as to the difference between false representations of health, in the application, and concealment of ill-health *interim* the application and the completion of the contract of insurance; and in instructing them that the defence here set up was a false representation.

10. In refusing to require plaintiffs' counsel either (*a*) to open his entire case in advance of the argument for defendant; or (*b*) to confine his reply to the points made for the defence.

*Mr. C. E. Spencer*, for appellant.

*Mr. W. B. Wilson, jr.*, contra.

April 6, 1888.   The opinion of the court was delivered by
MR. JUSTICE McGOWAN.   In 1882, W. L. Roach obtained a

certificate of membership in the "Knights of Honor Mutual Aid Association" for $3,000, which association, being about to fail, addressed a circular letter to their members, recommending them to transfer their membership to the "Kentucky Mutual Security Fund Company" of Louisville, Kentucky, upon certain terms therein stated. Accordingly, W. L. Roach, having paid up all assessments, premiums, and other dues to the "Knights of Honor," made written application to transfer his insurance to the defendant company on January 10, 1885, referring them as to his age, health, and habits to the original application, which he had made when he became a member of the "Knights of Honor;" and a few days thereafter (January 30), informing them by letter, that he had no objection to a medical examination, if the company would pay for it; and afterwards without such examination on February 26, 1885, he received a certificate of insurance (No. 7,298) in said company for $3,000.

W. L. Roach, the insured, died intestate on August 7, 1885, and his widow and daughter, the plaintiffs, brought this action on the policy of insurance or the certificate of membership, making an exhibit of the same. The complaint alleged the death of the insured, and that up to the time of his death he had duly fulfilled all the conditions and requirements of the said certificate of membership; and claiming that the plaintiffs were entitled to recover $3,000 and interest, and if necessary that the defendant company be required to make the necessary assessments to pay the said sum.

The defendant company answered, alleging that the plaintiffs had made a proper exhibit of the face of the certificate, but that there were certain stipulations, conditions, and agreements on the back of said certificate, to all of which the said W. L. Roach had agreed. "A copy of such of these as is deemed material to the defence is made a part of this answer, as exhibit 'A,' to which reference is prayed." And generally defendant denies each and every allegation of the complaint not herein more specifically denied, that is inconsistent with this answer. Further answering, defendant says, "That two material facts alleged by the said W. L. Roach to be true in his application aforesaid, and each of which was agreed between himself and the defendant to be the

basis and conditions of the certificate issued as aforesaid, were untrue. That is to say: Firstly. That the said W. L. Roach was in a good state of health, and was not affected with any disease or disorder, tending to shorten life; whereas, then he was not in good health, but was afflicted with chronic diarrhœa, a disease which does tend to shorten life, and of which the said applicant actually died, in the prime of life, being only forty-eight years of age at the time. Secondly. That his habits of life were correct and temperate; whereas, the very disease of which he died was superinduced by his irregularities and excesses, especially in the matter of eating; he having for a long time, prior to his said application, suffered from dyspepsia, the direct result of his excesses. That defendant was wholly unacquainted with the true condition, with the habits and health of said Roach  *   *   * and he induced the defendant so to believe and to issue the aforesaid certificate, by concealing from defendant the fact that before issuing the said certificate to him or the payment of any fees by him, &c., the aforesaid disease of which he died, had thoroughly developed itself, &c., and that said certificate is void," &c.

It appeared that these stipulations or agreements were endorsed on the certificate of membership: "This certificate is issued by the company, and accepted by the member upon the following express conditions and agreements, and assented to as forming part of the contract: I. The application, upon the faith of which this certificate issues, is hereby referred to, and made a part of this contract. * * * 6. *Prohibitions.* If the member named in the certificate be personally engaged in blasting, submarine operations, mining under ground, manufacturing poisonous or explosive chemicals, braking or coupling on and making up of railroad trains, bridge building, trading or living among savage tribes,  *   *   *  or shall use alcoholic or narcotic stimulants so as to produce intoxication sufficient to impair his or her health  *   *   *  or if there has been any concealment, misrepresentation, or false statement, or statements not true, made in the application on which this certificate issues, or if the conditions herein shall not be in all respects observed and performed by the party to whom this certificate issues, then, and in all such cases, this certificate shall be null and void," &c.

The cause came on for trial before Judge Kershaw and a jury. The plaintiff offered in evidence the certificate, with the aforesaid endorsements on it, and, among other things, they proved the circular letter which the "Knights of Honor" addressed to their members, recommending them to transfer their interests to the defendant company, to which exception was taken. There was testimony *pro* and *con* as to the issues of fact. The defendant submitted requests to charge, and after a full and clear explanation of the law by the judge, the jury found for the plaintiffs. The defendant appeals to this court upon numerous exceptions, which are in the Brief, and need not be restated here. We will not take them up *seriatim*, but will endeavor to group them according to the subject matter.

Exception 10 complains that the plaintiffs' counsel was not required to open his entire case in advance of the argument, or to confine his reply to the points made for the defence. The presiding judge read the rule of court upon the subject, and ordered the parties to conduct themselves accordingly. There could be no error in that.

Exceptions 2, 4, and 5 relate to alleged errors in the admission or exclusion of testimony. As to No. 2. We have looked through the "Case" carefully and we have not been able to find that any evidence offered by the defendant was rejected, for the reason that it tended to show non-performance on the part of the insured as to any of the conditions to be performed by him. As to No. 5. In allowing a witness for the plaintiffs to testify, against defendant's objection, that defendant's agent had offered to compromise the plaintiffs' claim. It appears that the plaintiffs did propose such testimony, but upon exception taken it was withdrawn. As to No. 4. In respect to the admission of the "circular letter" to the insured from the "Knights of Honor," we are unable to see that this evidence affected the case in the slightest degree. But at the same time we do not think that it was positively incompetent. The letter made the statement that they (Knights of Honor) were unable to get on with the business, and they "had arranged" with the defendant company, "one of the best and most thriving mutual insurance companies, for a transfer of our members upon the following terms," &c. The circular

enclosed a blank petition to be signed, filled up, and forwarded to the defendant company, asking the transfer suggested—being the same petition which was afterwards signed, sent, forwarded, and accepted by them.   This circular was plainly the result of a conference between the two companies in Louisville, was probably written and sent with the knowledge and concurrence of the defendant company.   At any rate, it was a part of the business, the initial step, and led up to the transfer.   We cannot say that its admission as part of the *res gestœ* was error of law.

Exception 6 charges error in refusing defendant's motion for a non-suit for failure on plaintiff's part either to put in evidence the application of W. L. Roach for membership in the "Knights of Honor," which was made a part of the contract, or to offer evidence of the performance of any of the conditions made in said application.   It is first objected that the application is not in evidence, and then that the conditions in it were not shown to have been performed.   Without now going into the inquiry suggested as to the alleged difference between a "mere representation" and a "warranty," it is quite clear that, before that question could arise, it was necessary that it should appear that such statements were made—a simple fact and matter of defence.   As it was alleged by the defendant company, so it was to be proved by them; and until such statements were shown, the plaintiffs could not be required to prove their truth.   As the insured, in his direct application to the defendant company, made reference to his original application to the "Knights of Honor," it may be that the plaintiffs could have been required to prove their truth, if they had been shown; but surely, as to that primary fact, the onus was on the defendant.   We cannot see that it was any part of the contract that those claiming under it should first show that the insured, in his original application to the "Knights of Honor," made certain statements, and then prove that they were true.   We see no error in refusing the motion for a non-suit.

Exception 3 alleges that the judge erred in holding that the statements made by the insured in his application for membership in the defendant company were "representations" merely, and not "warranties."   We are not sure that we clearly understand what is meant, upon a question of proof, by the difference be-

tween a "mere representation" and a "warranty." When the question is, whether a statement is true or false, does it make any difference whether it is called a "representation" or a "warranty"? The Circuit Judge made no reference whatever to the distinction suggested, but he charged explicitly, and without qualification, upon all the issues made as to the statements of the insured concerning his habits of life and health and his alleged concealment connected therewith. He read every allegation of the answer, saying : "Now, if that be true—these allegations of the defendant—then the plaintiffs cannot recover, and your verdict must be for the defendant." There is no evidence of any statements made by the insured which were not embraced within this charge, and it seems to us that the defendant, at least, has no cause of complaint, whether these statements should be called mere "representations" or "warranties."

All the other exceptions, in different forms, seem to make the point that the judge erred in holding that "the answer did not put in issue the allegation of the complaint that W. L. Roach duly fulfilled and conformed to all the requirements of said certificate of membership, so as to put the plaintiffs to the proof of all of them." As we understand it, the point is, that the judge erred in restricting the proof to the three issues made by the answer, when he should have held that, from the terms of the contract itself, the plaintiffs were bound to prove affirmatively every requirement, whether material or immaterial, controverted or not controverted ; as, for instance, that the insured was not personally engaged in "blasting," "manufacturing poisonous chemicals," or "living among savage tribes." The judge charged that "it is a a rule of law that every allegation in a complaint, which is not denied or controverted by the answer, is admitted, and the plaintiff is only bound to prove such allegations of the complaint as are controverted or denied by the answer. The only issues raised in this answer are those involved in those three breaches of duty on the part of the insured." It seems to us that this was good law.

We do not understand that a contract of insurance is, in this regard, an exception to the general rule, for the reason that such contract is based on the performance of all the requirements.

When a complaint alleges that the insured performed all that was incumbent on him to perform, and the defendant answers, denying performance in certain named particulars, all else needs no further proof, upon the principles of pleading. It has been held "that the burden of proving the truth of the statements of the insured in an application for insurance does not rest upon the insured or his representatives in an action on the policy, but that their untruth is matter of defence, to be pleaded and proved by the insurer. *Piedmont & Arlington Life Ins. Company* v. *Ewing,* 92 *U. S.,* 377; *Price* v. *Phœnix Mutual Life Insurance Company,* 10 *Am. Rep.,* 166; *Campbell* v. *N. E. M. L. Insurance Company,* 98 *Mass.,* 381, and cases cited.

In the Ewing case the Supreme Court said: "It is true that this court holds that all these answers are warranties, if so declared by the terms of the policy; and if any of them, however immaterial to the risk, is shown to be untrue, the policy is void. To establish the truth of the answers would, in many cases, require the party to prove a negative. * * * While it may be easy enough to prove the affirmative of one of these questions, it is next to impossible to prove a negative. The number of questions now asked of the assured in every application for a policy, and the variety of subjects and length of time which they cover, are such that it may be safely said that no sane man would ever take a policy, if proof to the satisfaction of a jury, of the truth of every answer were made known to him to be an indispensable prerequisite to the payment of the sum secured—that proof to be made after he was dead, and could render no assistance in furnishing it. On the other hand, it is no hardship that if the insurer knows or believes any of these statements to be false, he shall furnish the evidence on which that knowledge or belief rests. He can thus single out the answer, whose truth he proposes to contest, and if he has any reasonable grounds to make such an issue, he can show the facts on which it is founded," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.