DIAL v. VALLEY MUTUAL LIFE ASSOCIATION OF VIRGINIA.

1. In action on a life policy in a mutual assessment company, the defence was forfeiture for non-payment of an assessment. *Held*, that the books of the company were the best evidence to show that the assessment had been made and the forfeiture entered, and therefore testimony by the officers of what was on the books was secondary and properly ruled out.

2. An officer of defendant corporation, produced as a witness for plaintiff, having been asked on his direct interrogatories as to certain entries on his books, was asked in his cross-interrogatories to state anything of benefit to the defendant. *Held*, that no objection could be interposed to this cross-interrogatory, even if necessary to do so before the trial, nor could it be objected to even if it related to a matter not referred to in the direct examination, but the answer thereto not being legal evidence was properly ruled out on motion.

3. Within the time required for proof after the death of the assured, the beneficiary applied to the defendant company for blanks to make out proof of loss, and the company declined to furnish the blanks upon the ground that the policy was forfeited. *Held*, that there was evidence enough of waiver of proof to carry the case to the jury.

4. In an action on a policy of life insurance, it is not necessary for the plaintiff either to allege or prove such matters as appear only in the application. Without regard to whether these statements by the assured were warranties or merely representations, their falsity or breach must be set up and proved by the defendant as matter of defence.

5. In action on a policy of insurance in favor of the wife of assured, his declarations made after the policy was issued, are incompetent testimony as against his widow, the plaintiff.

6. Where the by-laws of the company required notice of an assessment to be in writing, parol testimony to prove a verbal notice was properly excluded.

7. A motion for continuance made during the progress of the trial is addressed to the discretion of the judge presiding at the trial.

8. Testimony as to payment of assessments by other policy holders, and of notices mailed to them, was irrelevant.

9. There was no error committed by the Circuit Judge in charging that the policy was an agreement between defendant and plaintiff to the effect that the sum named should be paid to plaintiff by defendant on a certain contingency.

10. It being the duty of the defendant corporation to make mortality assessments, it could do so only through its board of directors or other proper committee.

11. The judge properly instructed the jury that waiver of forfeiture for non-payment of assessments could be made only by act of the company, or by the company's ratification of acts of its local agents.

12. Representations made by the assured in his accepted application are presumed to be true until shown not to be; and therefore the plaintiff here was not bound to make proof of their truth, even though alleged in the complaint.

13. If notice of assessment was given as required by the policy, and there was a failure to pay within the time limited, and the company did not waive the forfeiture, the defendant was not liable. These matters were properly submitted to the jury.

Before WITHERSPOON, J., Richland, October, 1887.

This was an action by Arianna I. Dial, widow of George L. Dial, deceased, to recover from defendant on two policies of insurance in her favor on the life of her husband. The judge charged the jury as follows:

This is an interesting case; a good many novel points have been raised. I do not know that the points have ever been raised or adjudicated before in this State. I have been referred to no case in which they have been adjudicated. You may conclude that the case has occupied a very long time, but the principles involved fully justify the time that the court has devoted to it.

In order that you may understand distinctly what are the issues, I will briefly refer to the pleadings—the issues on which parties on the civil side of the court are to be heard. The plaintiff comes in and sets forth the ground of complaint against the defendant, and the defendant answers, and upon those pleadings the issues are raised which are presented to the court to pass on, and the jury, so far as the testimony is concerned. The plaintiff, Arianna I. Dial, alleges in her complaint that on the 7th day of April, 1883, the defendant, the Valley Mutual Life Association, issued to her husband, George L. Dial, a policy for $3,000 upon the life of said George L. Dial, and on the 2nd March, 1885, that the defendant issued another policy of $2,000 on the life of her husband, George L. Dial; that the amount of said policies (the two aggregated), $5,000, was made payable to the plaintiff, Arianna I. Dial, within 90 days after notice and proof of the death of the said George L. Dial. She further alleges

as a ground of complaint that her husband, the said George L. Dial, died February 16, 1886, at Madison, in the State of Florida; that her husband, the said George L. Dial, performed all the conditions of said agreement on his part; that under defendant's by-laws, governing this Mutual Life Insurance Company, it is provided that upon notice of death of a member of the association an official blank for proof of death should be furnished the applicant. She alleges that she caused due notice to be given the association of the death of her husband, George L. Dial. and demanded blanks for proof of death, but defendant refused to furnish them ; by the refusal of the defendant, the insurance company, to furnish blanks she was prevented from proving the death ; that she, having an interest in these policies, has performed all obligations in the policies on her part; she therefore demands judgment of this court for the sum of $5,000, the amount of the two policies, against the defendant, the insurance company, with interest from 16th February, 1886, or from the death of her husband, George L. Dial.

The defendant comes in court and denies, first, each and every allegation of the complaint, and for a second ground of defence, admits the corporate existence of the defendant, the insurance company, and the issuance of the policies as stated; that the plaintiff is the wife of George L. Dial, and that George L. Dial died at the time stated ; that plaintiff gave notice of the death and demanded blanks to make proof of death more than ninety days before the commencement of this suit.  Defendant further alleges that it refused to furnish the plaintiff with blanks for proof of death of George L. Dial, because George L. Dial had ceased to be a member of defendant's association.  Defendant denies that George L. Dial performed all the conditions or agreements on his part, or that plaintiff has ever performed all of the stipulations of the policies on her part.  Defendant further alleges that by the charter and by-laws of the defendant association, the insurance company, any member failing to pay mortality assessments after thirty days' notice in person or thirty days from date of mailing such notice to his address, ceases to be a member of the association, and forfeits all right, title, or interest in the same. Defendant alleges that on October 1st, 1885, notice of a mortal-

ity assessment was mailed at Columbia to George L. Dial; that his policies had been assessed on account of the death of one John S. Davis, and also the *pro rata* assessment upon the death of one G. D. Cobb; and that George L. Dial failed to pay said assessment in thirty days, and by such failure ceased to be a member of defendant's association.

I charge you that upon the issuing of this certificate or policy by the Valley Mutual Life Association of Virginia, the defendant in this case, George L. Dial became a member; as a member of that association he acquired certain rights and assumed certain duties and obligations. Where a party takes out a policy in a mutual life insurance company, with a certificate of this kind, he thereby becomes a member of the association, and by becoming a member of the association he is bound by its rules and the provisions of its charter and by-laws, which he is presumed to know—that is, the rules and by-laws that have been passed for the government and regulation of the business of the association, not inconsistent, not beyond the scope of the charter of the association. The records of the company then, as long as he is a member of the association, are records and evidence for or against him, and the acts of the officers within the scope of their authority are binding upon him.

Now, in deciding upon the rights of the plaintiff and the rights of the defendant in this case, in passing upon these questions arising under policies of a mutual insurance company, it is necessary to look to the charter which gives existence to the corporation, its by-laws, which are passed in pursuance of the charter, and the application and policy to ascertain what is in their contract in determining the rights of the respective parties. Whatever the agreement is as between Arianna I. Dial and this defendant corporation is just the same as if two individuals had made the contract or agreement. When we ascertain what the contract or agreement is, each is bound by it just the same as if they were individuals; they are bound by all its terms, stipulations, and obligations.

How does a party become a member of this defendant association? It is upon an application. When George L. Dial (if you conclude he was a member of the association) became a member

of the association, what obligation did he assume? He assumed
to pay to the treasurer so many dollars as his annual payments;
here is the intrinsic evidence [the policy] that he complied with
it; that he paid his annual payment in each of these policies;
that first annual payment was paid; and he further agrees—and
this is the consideration upon which the defendant association
takes him in—admits him to the privileges of the association, and
he takes the certificate or policy on that condition; "in consider-
ation of the statements and representations contained in this ap-
plication" that he has made to become a member, which is made
a part and parcel of this certificate or policy as much so as if
recited here, and upon the faith of the statement and representa-
tions this certificate of membership is issued (that is, the com-
pany issued this certificate upon the faith of the representation
contained in this application), and upon the further condition or
consideration that in addition to the annual payment he makes
at the time he takes out this certificate, that he will pay so much
in one policy (ten dollars) and in the other so much. This policy
I have before me is for $2,000. As to the other policy, of
course, the amount varied according to the amount in the policy.
The further condition is, upon the payment of ten dollars in this
policy, "made annually after date hereof for the next ensuing 3
years, and thereafter the further sum (a lesser sum) annually
during his life, together with mortality assessments in pursu-
ance of the authority granted by the charter, and according
to the by-laws, regulations of the association, and the terms stip-
ulated in the application upon which this certificate is granted."

When George L. Dial made this application, which is a part
of the contract, he agreed "to pay into the treasury of the defen-
dant's association, upon the death of each and every member of
the association within 30 days after the date of the notice of such
death, my *pro rata* mortality assessment, unless the amount to
the credit of the death loss account acquired after the date of
these applications renders such assessment unnecessary." He
agrees to that in addition to these payments for 3 years and pay-
ments for life; that is, that he "will pay into the treasury on the
death of each member within 30 days after date of notice of such
death his *pro rata* mortality assessment, unless the amount to the

credit of the death loss acquired after date of application renders such assessment unnecessary." He agrees, further, to keep the company advised as to place of his residence, or change of residence, so the company can communicate with him, and to appoint some one as his agent to pay his dues, and to notify the secretary of the name and post office address of such agent, in case of change. Then he agrees to give a true and correct answer to each of the following questions. There are some 21 questions here, propounded to him by the insurance company, and to those questions he answers, and those answers are satisfactory to the insurance company at the time they accept this risk and take him into the association. The evidence of that is upon these answers they issue this certificate, which is the evidence of his membership in the association.

Rule 29 of the by-laws states that "immediately upon the death of any member of the association, notice thereof shall be given to the secretary, in writing, upon which the secretary shall supply the proper parties with an official blank mortality notice, or proofs of death, which shall be properly filled out as the blanks indicate, and returned to the secretary." In the first place, you must be satisfied, as a matter of fact, that George L. Dial was a member of this association at the time of his death, and that at the time of his death Mrs. Arianna I. Dial herself, or through her agent, or some one else immediately thereafter, gave notice of the death of George L. Dial. You must be satisfied, as a matter of fact (which she must establish), that Mrs. Arianna I. Dial is the beneficiary under this certificate or policy.

I have been requested to charge you by the plaintiff: "That if the defendant, the insurance company, issued to George L. Dial the policies or certificates of membership" (that is, in the second case) "described in the complaint upon the considerations expressed in the policies"—(I have read to you the considerations)—"and the answers and representations made by George L. Dial in his application for membership were true, and the plaintiff is the person described in the policies as the wife of George L. Dial, the defendant thereby became bound to pay to the plaintiff the sum of $3,000 and $2,000, respectively, 90 days after notice of death of said George L. Dial, and the approval

at the home office of the proofs of death required, unless said George L. Dial had forfeited his membership in the company for any of the causes mentioned in the applications, by-laws, or the certificates of membership or charter." I so charge you. You will understand that she is entitled to this, "unless George L. Dial forfeited his membership in the company for any of the causes mentioned in the applications, the by-laws, or certificates of membership or charter."

Second. "That the burden is upon the defendant to prove the falsity of the answers and representations made by George L. Dial in his applications for membership." Under the authorities produced here, I so charge you; that is, the defendant company having accepted those answers of George L. Dial upon the applications as true, they are *prima facie* true until the contrary appears, and that if the company, the defendant, desired to show that any of those matters are not true, then they could have alleged it in their answer and brought the matter up.

So far as the certificate or policy is concerned, George L. Dial consented to accept this policy upon certain conditions, which appear in the policies themselves. I do not know that it is necessary for me to read them all to you. If you wish to see them, you can call for them. I will state some of them : "If any statement or representation made in the application for this certificate of membership be in any respect untrue, the consideration of this contract shall be deemed to have failed, and the association shall be without liability under it." He consented to that. "If any annual dues or mortality assessments on this certificate of membership shall not be paid within thirty days from date of notice in person, or from date of mailing the same to his address, the consideration of this contract shall be deemed to have failed, and the association shall be released from all liability and all payments heretofore made shall be forfeited." In taking these policies he consented to take them on that condition. It goes on to say : "If he should enter into active service on railway trains or steam vessels after date of this certificate, he shall notify the secretary of this association." "If the said person, upon whose death this certificate of membership matures, shall die in consequence of a duel, or of the violation of law, or he shall commit

suicide, or by disease, violence, or accident brought about by his intoxication"—and several other matters mentioned therein, the certificate will be void.

Here is another clause I want to call your attention to—"No. 7"—one of the conditions under which these policies were accepted: "No person, except the president or secretary of the association, is authorized to make, alter, or discharge contracts, or to waive forfeitures," and "the proof of death by which this contract matures shall be furnished to the association within one year after such death." The proof of death can be furnished one year after death, and the by-laws state that notice of death must be immediately after death.

I am further requested to charge you, "That if said policies" referred to, "or certificates of membership were so issued, and said answers and representations were true, and the death of the said Geo. L. Dial occurred in the manner alleged in the complaint, the plaintiff had the right to demand of the defendant the sums of $3,000 and $2,000 ninety days after giving due notice of the death of said George L. Dial, and furnishing to the defendant the proofs of his death, prescribed by the by-laws of the defendant association, unless his membership had been previously forfeited for any of the causes named in the policies, by-laws, or applications for membership, or charter." I so charge you.

I have been requested to charge you, "That mortality assessments could only be made to pay death losses actually incurred." I so charge you, because that is a part of the contract here to which he subscribed, and upon which the company accepted him as a member; that is, as far as mortality assessments are concerned, "he should pay into the treasury, upon the death of each and every member of the association, within 30 days after the date of the notice of such death, his *pro rata* mortality assessment, unless the amount to the credit of death loss account, acquired after the date of his application, rendered such assessment unnecessary;" therefore he was only bound to pay his *pro rata* assessment lawfully made.

I have been requested to charge you, "That these assessments could only be made by the board of directors of the corporation in its organic capacity, or, in the intervals of its session, by the

executive committee thereof." It seems neither in the charter or the by-laws, or in their agreement, is it specified how these assessments are to be made. The policies and the charter, however, provide for a board of directors. Now, I charge you that the board of directors are the proper parties to make this assessment—the board of directors in its organic capacity—or, if not in session, then the executive committee thereof, or the financial committee, as the case may be.

The defendant sets up here that the deceased, George L. Dial, who held a certificate of membership in its company, has forfeited his right to membership; and having forfeited his right to membership, the beneficiary, Mrs. Arianna I. Dial, is not entitled to claim the amount of these policies. So far as this branch of the case is concerned, there is a clause of forfeiture in these policies ; that clause of forfeiture is inserted there evidently for the benefit and protection of the defendant, the insurance company ; and before that company can claim the benefit of such forfeiture for non-payment of these mortuary assessments, it must affirmatively establish the facts upon which, and under which, such forfeiture can take effect. What are these facts and circumstances ? By the very terms of the policies themselves, the collateral agreements made part of the policies or the application—one of these facts is, that a mortality assessment upon George L. Dial was necessary after he became a member of the association, and that the same was made. Not only that, but the further fact, the defendant must make it appear, before it can claim the benefit of this forfeiture, which is intended for the security of the company—which is for the benefit of the company—it must further appear that George L. Dial had notice, either in person or through the mail, of the *pro rata* part of a valid assessment necessary to meet death claims. It must further be made to appear, and by the party claiming the benefit of this forfeiture of the company, that George L. Dial failed, or refused, to pay such assessment— for instance, assessment 45, more particularly referred to—within 30 days from date of notice in person, or from date of mailing of the same to his address.

Now, I charge you in that connection, that if the company, through its authorized officer, has to give to George L. Dial a

notice, showing the necessity of an assessment, giving him the amount of that *pro rata* assessment, or data upon which he could ascertain the necessity of that *pro rata* assessment, and if they gave it to him and it was sent by the secretary of this company, then that furnishes *prima facie* evidence of the correctness of it; but that notice must give the information from which he can ascertain the necessity of the assessment and the amount of the assessment he is called upon to pay, and after that notice is given him, he has thirty days in which to pay that notice, either served upon him in person or served upon him by mail—by putting it in the mail. It matters not what may be the date of the notice, or what the notice may show as to time; you must pay. Under his agreement, under the contract made between himself and the insurance company, he has thirty days from the personal service of such notice, or from the mailing of such notice, in which to pay it; and this company could not claim a forfeiture against him if he paid within that time, because, if he paid in that time, then he has complied with his contract. But, if they gave him notice, either personally or through the mail, of this information to which I have referred, showing that it was necessary for him to pay a *pro rata* assessment in compliance with his contract, and he failed to pay it in thirty days from the personal service of such notice, or from the mailing of same, then I charge you that he has forfeited his right to his privileges, and he ceased under the very terms of this contract to become a member of that association, lost all rights under this charter, and his beneficiary can take nothing under it.

I have been requested to charge you with reference to the matter of waiver or estoppel. Waiver and estoppel amount to very much the same. Estoppel by conduct is where one party has been induced by the conduct of another to do, or forbear doing, something which he would not, or would, have done but for the conduct of the other party. This is the law of the doctrine of estoppel or waiver. In other words, if the authorized agent of this defendant company consented to extend the time to George L. Dial for the payment of No. 45, mortality assessment, or if he acted in such way as to lead George L. Dial to believe by its dealing with him that he could have further time, if the

agent here gave him indulgence, and thereby waived strictly the right to forfeit, and if that fact was known to the president or secretary of the organization itself, and they ratified, confirmed, and approved of it, then, if he afterwards paid in pursuance of such indulgence, it does not lie in the mouth of the defendant, the insurance company, to come here now and claim estoppel.

Where parties seek by waiver to relieve themselves of an obligation or of a duty they are under obligation to perform, they must satisfy you of the waiver as a matter of fact. As I have stated to you, it matters not what Pickard did here as to the waiver of the forfeiture; it would not bind this company unless the company had knowledge of it or ratified it afterwards, confirmed and approved it. Why so? Especially in this case because, by the very terms of the contract, George L. Dial accepted this certificate upon the ground, and with the distinct understanding, that no one was authorized to make such waiver, except the president and secretary of this company; but notwithstanding the fact that the company has imposed that as a condition of acceptance of this certificate, of course they could waive it. It is for you to say, as a matter of fact, whether or not they have waived it. As far as this matter of waiver is concerned, it is a question of fact for you to pass on.

I have stated to you that it was the duty under the rules and regulations of the by-laws, of the beneficiary, Mrs. Arianna I. Dial, or through her authorized agent, or somebody representing her, to give immediate notice of the death of George L. Dial, if she claims he was a member of this association, and it was the duty of the defendant company to have furnished her with blanks upon which, according to the form prescribed by the defendant company she was required to make out proof of that death. I charge you if she promptly notified the defendant company of the death of her husband, George L. Dial, and she requested or demanded from the company the proper blanks and forms under this provision of the by-laws, for the purpose of making out a proof of death, and the company refused to furnish her those blanks, upon the ground that he was not a member of the company; if you find that as a matter of fact, the defendant company then cannot come here and take any advantage of that. It

was her duty "to give immediate notice" (the very words used in the rules and regulations), and it was the duty of the company to furnish her those blanks. If the company refused to furnish those blanks upon the ground that George L. Dial had forfeited his right under these policies, was no longer a member of the association, and the beneficiary, therefore, was entitled to no privilege under the policies, then they cannot take advantage of her not having made the proof. If she attempted to make it and was prevented from making it by their act or conduct, they cannot come here now and avail themselves of any advantage by her not having done so. This, as you see, is also a matter of fact for you to decide.

I have been requested to charge you other matters : "That a member could be considered in default for non-payment of annual dues or mortality assessment only after the expiration of full thirty days from the service of the notice in person or the mailing of the same to his address; that the time of payment is not governed by the date of the notice itself or the terms thereof specifying a day of payment." I have so charged you, that he has thirty days from the personal service of the notice or thirty days from the mailing of the notice, without reference to the date of notice or time fixed in the notice for the payment.

I have been requested to charge you : "That if the assessment exceeded as to the deceased the *pro rata* amount for which he was liable to meet death losses mentioned in the notice, the assessment was void as to him." I so charge you. I have already indicated it must be a valid assessment, intended to meet a death loss, an assessment which was necessary after he became a member of the association. If the assessment was void, of course he is not in default in not paying.

I have been requested to charge you : "That it is a question for the jury to determine whether the defendant has waived the giving of the notice of death and the furnishing of proofs of death." I have already charged you that.

"That the by-laws require the defendant to furnish the prescribed blanks for proofs of death, and a refusal to furnish the same upon a proper application therefor would be a waiver of the right to require such proofs." I charge you if she made proper

application at the proper time, and the defendant company, by
their conduct, prevented her from getting and making the proof
of death, of course she is not bound.

I have been requested to charge you by the defendant: "That
in order to recover, the plaintiff must prove the allegations of
the complaint to the satisfaction of the jury, otherwise the ver-
dict must be for the defendant." As a general rule that is cor-
rect, no doubt about it; but as I have said in this case under the
authorities, that so far as the representations made in this appli-
cation are concerned, the company having accepted them as true,
the presumption remains that they are true until the contrary
appears. There are certain matters that Mrs. Dial must estab-
lish, one of which is, that George L. Dial was a member of the
association (that is evidenced by these policies), and she is bound
to prove that he is dead. It is for you to say whether or not she
has proved it. She is bound to prove that she is the beneficiary,
and the party entitled to whatever may be due, if anything,
under these policies. She must satisfy you upon these points by
the preponderance of the evidence in the case.

Another question of fact submitted is as to whether or not
there has been a forfeiture. As I have indicated to you, that
forfeiture depends upon conditions precedent, that is, the giving
of notice to the insured to pay a certain assessment in thirty days
from the service or mailing of said notice, and this must appear
before there can be a forfeiture, as a matter of fact. It is for
you to say whether or not these matters have been established.

I have been requested to charge you "that the doctrine of
waiver applies as well to the party insured and to the party for
whose benefit the insurance is made and their agents as to the
insurer." I charge you that where two parties enter into an
agreement, it matters not whether an insurance company or an
individual, the same rule applies both ways. If a waiver can be
applied to one side, it can be applied to the other.

Then, I have been requested to charge you "that if the allega-
tions contained in paragraph 4 of the answer to the first cause of
action are established to the satisfaction of the jury, your verdict
must be for the defendant;" that is, that on October 1st they
gave notice to George L. Dial of these two assessments in ques-

tion, the death of the parties named therein rendering it necessary to make the assessment upon George L. Dial. I charged you that in connection with the general charge, that is, that it must appear that George L. Dial had the notice, and that notice contained information that there was a valid assessment, and giving his *pro rata* share of the amount which he was required to pay. If there was such a notice, with reference now to this No. 45 assessment, and it was served upon George L. Dial, or mailed to him, and he didn't pay that assessment within thirty days from the date of personal service, or the mailing of it, and this company had done nothing through its agent recognized by the president and directors waiving forfeiture, why, then, I charge you that the company is not liable.

I have endeavored to explain the law to you in this matter; you are the sole judges of the fact. I have given you the law as I understand it, and you are bound by that law, right or wrong. You are to apply the facts in this case to the law as I have given it. It is for you to say whether or not the plaintiff has made out her case; whether or not George L. Dial was a member of this association at the time of his death, or had he forfeited his right, title, and interest under this charter. If he had, she cannot claim anything against this company; but if he was a member at the time of his death, having complied with the conditions and stipulations of his agreement, and if the defendant has not paid these policies, I charge you she is entitled to recover.

If you conclude the plaintiff is entitled to recover on these two policies, one being for $3,000 and the other for $2,000, your verdict will be: We find for the plaintiff so many dollars. If you conclude that the plaintiff is entitled to recover anything, she is entitled to recover interest on the amount due her from the time she made demand upon this company. If, however, you conclude that George L. Dial has forfeited under this contract— this certificate—and at the time of his death he was not a member of this company, then your verdict will be for the defendant. Take the record and find your verdict accordingly.

The jury found a verdict for plaintiff for $5,000, also for $498.71 interest on same. Motion was made on the minutes for

a new trial, which was refused; and defendant then appealed to
this court on the following exceptions:

1. That the testimony of P. B. Christy was admissible as to
the custom of business of the Columbia agency of defendant, as
to the receipt of premiums after date specified in defendant's notice
for payment. 2. Excluding the answer of A. H. H. Stuart to the
defendant's second interrogatory. 3. Excluding the answer of
E. L. Edmondson to plaintiff's 12th interrogatory and defendant's
2d interrogatory. 4. Refusing defendant's motion for non-suit.
5. Ruling out J. D. Pickard's testimony as to George L. Dial's
statement in regard to the reception of notice of mortality assess-
ment No. 45, and in regard to his attempt to be reinstated in
membership. 6. Excluding Pickard's testimony as to acts of
insured, showing knowledge of the forfeiture of his policies and
attempt to be reinstated in membership. 7. Excluding testimony
of Pickard as to any notice requiring payment of mortality assess-
ment, other than regular written notice sent by mail, having
been given insured by Pickard. 8. Excluding testimony of Dr.
Gaubert as to the purpose for which he made medical examina-
tion of insured. 9. Excluding medical opinion of Dr. Gaubert
as to the length of time during which insured had not been a
fit subject for insurance. 10. Refusing defendant's motion for
continuance. 11. Excluding testimony of E. L. Edmondson as
to necessity for mortality assessment No. 45 to meet the death
losses in that assessment mentioned. 12. Excluding testimony
of Edmondson as to whether there was anything to the credit of
the mortality fund October 1st, 1885. 13. Excluding testimony
of Edmondson as to necessity of making an extra assessment
November, 1885. 14. Excluding testimony of Edmondson as to
assessment for death of persons subsequent to deaths of Cobb
and Davis. 15. Excluding testimony of Edmondson as to
whether the mortality assessments kept up with the death losses.
16. Excluding testimony of Edmondson as to assessments and
mortality losses in 1885 and generally. 17. Excluding testi-
mony of Edmondson as to facts in his own knowledge, creating
a necessity for an extra assessment in November, 1885. 18.
Excluding testimony of Pickard as to how many of the 700 to
800 people, members of the association in South Carolina, to

whom mortality assessment No. 45 was mailed, besides George L. Dial, did not pay it.    19. Excluding testimony both by Pickard and the record that Dial was the only one of the South Carolina members of the association who did not pay assessment No. 45.    20. Excluding testimony both by Pickard and the record that extra assessment was mailed in November, 1885.    21. Excluding testimony both by Pickard and the record as to the number of South Carolina members of the association to whom mortality assessment No. 45 was mailed.    22. To his honor's charge to the jury that the certificate of membership was an agreement between plaintiff and defendant.    23. That mortality assessments must be made by the board of defendant in its organic capacity, or if not in session, then by the executive committee or the financial committee thereof, as the case may be.    24. That before defendant can claim the benefit of a forfeiture for non-payment of mortality assessments, it must affirmatively establish the facts upon which, and under which, such forfeiture can take effect.    25. That the notice of the mortality assessment must show that it is a valid *pro rata* assessment.    26. That the notice of the mortality assessment must show the necessity of such assessment, or show data upon which Dial could ascertain the necessity for him to pay such *pro rata* assessment.    27. That it was for the jury to say, as matter of fact, whether the defendant had waived its right of forfeiture for the non-payment of mortality assessment No. 45.    28. That his honor refused to charge defendant's request, "That in order to recover, the plaintiff must prove the allegations of the complaint to the satisfaction of the jury, otherwise the verdict must be for the defendant."    29. That his honor refused to charge defendant's request, "That if the allegations of paragraph IV. of the answer to the first cause of action are established to the satisfaction of the jury, their verdict must be for the defendant as to the first cause of action."    30. That his honor refused to charge defendant's request, "That if the allegations of paragraph IV. of the answer to the second cause of action are established to the satisfaction of the jury, their verdict must be for the defendant as to the second cause of action."    And the defendant also excepts to the order of his honor, dated November 9, 1887, refusing defendant's motion for

a new trial on the ground that the verdict being contrary to the charge of the presiding judge, the said motion should have been granted.

*Messrs. Bachman & Youmans*, for appellant.

*Messrs. Lyles & Haynsworth*, contra.

November 27, 1888.  The opinion of the court was delivered by

MR. JUSTICE McIVER.    This was an action to recover the amount of two policies of insurance, issued by the defendant company, on the life of George L. Dial, and payable on his death to the plaintiff, his wife, within ninety days after notice and proof of the death of the said George L. Dial.    The defendant, by its answer, set up two defences : First, a general denial of all the allegations of the complaint.    Second, that prior to the death of said George L. Dial he had forfeited both of said policies by failing to pay a mortality assessment—No. 45—of which notice was given to him on the 1st October, 1885, which became payable within thirty days from that date.    The plaintiff offered testimony tending to show the corporate capacity of defendant; the genuineness of the policies; that plaintiff was the wife of George L. Dial at the time the policies were issued, and as such named as payee therein ; that George L. Dial died from natural causes on the 16th February, 1886 ; that a few days afterwards notice was given to the local agent of the company and afterwards to the secretary, and the necessary blanks for making out proof of death requested, which was declined upon the ground that the policies had been forfeited by the failure to pay mortality assessment No. 45 in October, 1885.

The testimony of Stuart, the president, and Edmondson, the secretary of the company, taken by commission, was read by the plaintiff, when the former in answer to the second cross-interrogatory, which was in the stereotyped form—"State anything within your knowledge tending to the benefit of the defendant corporation"—proceeded to state something that appeared on the books of the company going to show that the policies in question had been forfeited, and the other witness, Edmondson, in answer to

the 12th direct interrogatory in the same form, as well as to the 2nd cross-interrogatory in like form, stated that it appeared from the books of the company that the policies had been forfeited. These answers were ruled out as not responsive to the interrogatories, and also upon the ground that the books themselves were the best evidence.

At the close of plaintiff's testimony the defendant moved for a non-suit, upon the ground that the plaintiff had failed to introduce any evidence to establish all the material allegations of the complaint. This motion was refused, and after the testimony on behalf of the defendant had been submitted, the case went to the jury under the charge of the Circuit Judge, which, as well as all the testimony, is fully set out in the "Case." The jury found a verdict in favor of the plaintiff, and the defendant submitted a motion for a new trial upon the ground that the verdict was contrary to the weight of the evidence and the charge of the judge, which motion was likewise refused, and judgment having been entered on the verdict, the defendant appeals upon numerous grounds (thirty-one in number), which are set out in the record.

The first exception, raising the question as to the admissibility of Christy's testimony as to the custom of the Columbia agency, was not pressed in the argument here, and was, we suppose, abandoned; but whether abandoned or not, it cannot be sustained, for the reason (if there were no other) that it was wholly immaterial, as the witness said he did not know what the custom was.

The second and third exceptions, relating to the exclusion of the answers of Stuart and Edmondson to certain interrogatories and cross-interrogatories, will be considered together. It seems to be true, as respondent's counsel contends, that these answers were afterwards allowed to come in when Edmondson was put upon the stand as a witness for the defence, under some alleged previous understanding between the counsel in the case; yet as this testimony stood excluded at the time the motion for a non-suit was made, it will be necessary to consider its competency. The object of this testimony was to show that mortality assessment No. 45 had been duly made, and that George L. Dial having failed to pay the same within the required time, the policies of insurance sued upon had been forfeited; and this it was proposed to show—not

37

by the books containing these entries—but by the testimony of these officers that they had seen such entries on the books of the company. We agree with the Circuit Judge that the books themselves were the highest evidence, and therefore the secondary evidence was incompetent.

But it is contended by appellant that the plaintiff had waived this by examining these witnesses as to what appeared upon the books. We do not find that any question was asked the witness, Stuart, as to what appeared on the books of the company, though, in the fifth interrogatory, addressed to the witness, Edmondson, he was asked to refer to the books of the company and give certain information as to a wholly different matter from that which these witnesses undertook to speak of, *from the books,* in reply to the general questions usually found in interrogatories prepared for the examination of witnesses by commission. It does not seem to us that the interrogatories in chief submitted to either of these witnesses were of such a character as to make it competent for such witnesses to testify as to what appeared upon the books of the company in reference to mortality assessment No. 45. It will be observed that the objection was—*not* to the *interrogatories,* which seem to have been wholly unobjectionable, but the objection was to the *answers,* and therefore, of course, no objection could have been previously interposed; if, indeed, this was necessary under the case of *McBride* v. *Ellis,* 9 Rich., 269 ; 67 A. D., 553. We do not base our conclusion upon the ground that the answers excluded were not responsive to the interrogatories, or rather that they related to matters not referred to either in the interrogatories in chief or the cross-interrogatories (for the rule in this State is, that a party may, by a cross-examination, bring out new matter not before referred to, and may, in fact, prove anything essential to his case provided it is otherwise competent, *Kibler* v. *McIlwain,* 16 S. C., 550 ; *Dillard* v. *Samuels,* 25 *Id.,* 318); but we rest our conclusion upon the ground that the books were the best evidence, and the testimony in question was properly excluded as secondary.

The fourth exception raises the question as to the propriety of refusing the motion for a non-suit. The inquiry is whether there was any testimony adduced tending to sustain all the material

allegations of the complaint.    It seems to us that there was, and hence the non-suit was properly refused.    It is true that under the charter and by-laws of the company the amounts secured by the policies were not payable until the expiration of ninety days after notice and proof of the death of the assured had been furnished to the company, and therefore, as a general rule, evidence that such notice and proof of loss had been furnished to the company would be necessary to maintain such an action as this.    It is also true that while notice of the death of George L. Dial was given to the company soon after that event occurred, there was no evidence that any proof of such death was furnished to the company before this action was commenced; but there was evidence that application had been made to the company within due time for such blanks as had been prescribed for the purpose of making out such proof, which the by-laws required the company to furnish, and that such application had been refused—not upon the ground that such application had not been made within the prescribed time, but solely upon the ground that the policies had been forfeited by the failure of George L. Dial to pay mortality assessment No. 45, within the prescribed time.

The question, therefore, is whether such refusal on the part of the company was a waiver of the required proof of death, and dispensed with the necessity for the plaintiff to show a compliance with this condition precedent to a recovery.    The case of *Knickerbocker Life Insurance Company* v. *Pendleton* (112 U. S., 696), with the authorities therein cited, shows conclusively that a distinct refusal to pay and a denial of liability, upon the ground that the policy had lapsed and was forfeited, is a waiver of the condition precedent requiring proof of death; and this doctrine seems to have been recognized in this State in *Charleston Insurance & Trust Company* ads. *Neve*, 2 McMull., 237, and *Madsden* v. *Phoenix Fire Insurance Company*, 1 S. C., 24. When, therefore, the company was notified of the death of Dial, and the necessary blank forms to make out proof of death were applied for and refused, upon the ground that the policies had been forfeited, this was a waiver of the required proof, or at least was sufficient evidence of such waiver as rendered it necessary to submit the question to the jury.

If it should be contended that in order to maintain this action, it was necessary for the plaintiff to prove affirmatively the truth of all the answers to the questions contained in the application, we would say, in the language of Mr. Justice Miller, in *P. & A. Life Insurance Company* v. *Ewing*, 92 U. S., 378 : "The number of the questions now asked of the assured, in every application for a policy, and the variety of subjects, and the length of time which they cover, are such that it may be safely said that no sane man would ever take a policy if proof to the satisfaction of a jury of the truth of every answer were made known to him to be an indispensable prerequisite to payment of the sum secured ; that proof to be made only after he was dead, and could render no assistance in furnishing it.　On the other hand, it is no hardship that, if the insurer knows or believes any of these statements to be false, he shall furnish the evidence on which that knowledge or belief rests."　We do not think, therefore, that the burden of proving the truth of these answers rested on the plaintiff.　On the contrary, we think that the correct rule is as stated in *Continental Life Insurance Company* v. *Rogers* (119 Ill., 474 ; *S. C.*, 59 Am. Rep., 810): "That it is not necessary for the plaintiff, in an action on the policy, to either allege or prove such matters as appear in the application only.　To be availed of as a defence, without regard to whether they are warranties or representations merely, their falsity, or breach by the assured, must be set up and proved by the defendant as matter of defence." See also what is said by Mr. Justice McGowan in the recent case of *Roach* v. *Kentucky Mutual Security Fund Company*, 28 S. C., 431, and 6 S. E. Rep., 286.

Exceptions 5 to 9 inclusive, in so far as they relate to the declarations of George L. Dial, may be considered together. These declarations were clearly incompetent.　Neither he nor any representative of his was a party to the action.　Besides, the authorities show that his declarations, in a case like this, are incompetent.　See *Bliss on Life Insurance*, section 383, and the other authorities cited by counsel for respondent.[1]　As to the seventh exception, it seems that the testimony there alluded

[1]*Bliss Life Ins.*, § 384; 21 *Fed. Rep.*, 592; *Sams. Dig.*, 513, ¶ 23 ; *Manhattan &c. Co.* v. *Smith* (Ohio), 22 *Cent. Law J.*, 404 ; 93 U. S., 379.

to was eventually admitted, and besides, the by-laws expressly required a *written* notice. So, too, as to the testimony of Dr. Gaubert, alluded to in exceptions 8 and 9, it was admitted, except to state the declarations of Dial.

As to exception 10, it is only necessary to say that a motion for a continuance is a matter addressed to the discretion of the Circuit Judge, and, as has been often held, its refusal affords no ground for appeal. Besides, the reason for the motion seems to have been removed when the plaintiff's counsel consented that the testimony in question might be offered as a part of the evidence for defendant.

Exceptions 11 to 17 inclusive may be considered together. The testimony, the exclusion of which is there complained of, was of facts which appeared, or should have appeared, on the books of the company, and they constituted the highest evidence of such facts. We do not understand, as seems to be intimated in the 17th exception, that the witness was forbidden to testify to any fact within his own knowledge, not derived from an examination of the books.

Exceptions 18 to 21 inclusive raise the question as to the competency of the testimony offered to show the number of South Carolina policy holders who had paid assessment No. 45, and to whom notice of an extra assessment in November, 1885, had been sent. We cannot see the relevancy of such testimony. The question here was whether Dial had forfeited his policy by a failure to pay mortality assessment No. 45, and it mattered not how many or how few of the other policy holders had paid or neglected to pay such assessment. Nor could the mailing of notice of the November assessment to other policy holders affect that question.

Exception 22 imputes error in the charge to the jury that the certificate of membership was an agreement between plaintiff and defendant. For a proper understanding of this, as well as subsequent exceptions hereafter to be noticed, imputing error to the Circuit Judge in his charge to the jury, we think it due to his honor that the entire charge, which is too long to be inserted here, should be incorporated into the report of this case. In regard to this particular exception, we do not see that the charge

was as the exception seems to intimate; and even if it was, while it may have been immaterial, we do not see that it was erroneous. The contract sued upon was an agreement by the defendant to pay to the plaintiff a certain sum of money on a certain contingency, and in that sense the agreement was between plaintiff and defendant; and this was manifestly all that the charge could properly be construed to mean.

As to the 23d exception, it seems to us clear that there is no foundation for it, as it was unquestionably the duty of this corporation to make the mortality assessments, and we do not understand how it could do so except through its board of directors, or some committee charged with the management of its affairs.

The 24th exception raises the question of the burden of proof, where the defendant relies upon a forfeiture as a defence. This is unquestionably an affirmative defence, and upon well settled principles the burden of proof is upon him who affirms.

We do not understand the charge to have been, as intimated in exceptions 25 and 26, rendering it necessary that a notice of a mortality assessment should contain a complete financial exhibit of the affairs of the company. On the contrary, it seems to us that the charge could only be understood to mean that the notice must contain a statement of the fact which rendered the mortality assessment necessary, to wit: the death of one or more of the members or policy holders, giving the amount of the *pro rata* assessment, and that such a notice "furnishes *prima facie* evidence of the correctness of it."

Exception 27 complains of error in charging the jury that it was for the jury to say, as matter of fact, whether defendant had waived the forfeiture for non-payment of mortality assessment No. 45, within the prescribed time. This exception, as we infer from appellant's argument, is based upon the ground that there was no evidence of any waiver *by the company*, and that even if there was some evidence tending to show a waiver by the local agent, the company could not be bound by it. An examination of the charge will show that the Circuit Judge particularly instructed the jury that nothing done by the local agent, tending to show a waiver, would be binding on the company unless the company subsequently ratified or approved what was done by the

local agent; and he went on to instruct them still more particularly that this was so in this case, because Dial had accepted his certificate of membership, "with the distinct understanding that no one was authorized to make such waiver except the president and secretary of the company; but notwithstanding the fact that the company has imposed that as a condition of acceptance of this certificate, of course, they could waive it. It is for you to say, as matter of fact, whether or not they have waived it." That this was strictly in accordance with law may be seen by reference to the cases of *Insurance Company* v. *Norton*, 96 U. S., 234, and *Insurance Company* v. *Eggleston*, *Ibid.*, 572.

There was no error in refusing to charge the request which constitutes the basis of exception 28, without the qualification found in the charge. If the request had been, "That in order to recover the plaintiff must prove the *material* allegations of the complaint," it could not, and probably would not, have been refused; for the judge did practically charge the jury that the plaintiff could not recover unless she established all the *material* allegations of her complaint, but that so far as there were any allegations in the complaint which were not essential to her case, it was of no consequence whether they were proved or not.

The same remark may be made in reference to the requests which constitute the basis of exceptions 29 and 30. They could not properly be charged without the qualification found in the charge, as that would have ignored one of the main questions in the case, to wit: whether the forfeiture had been waived.

In reference to the last exception, not numbered, it is only necessary for us to say that we have been unable to discover wherein the verdict of the jury was contrary to the judge's charge. The verdict turned upon questions of fact properly submitted to the jury.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.